O'Neal versus Morales Good morning, Your Honors. My name is Jason Leventhal. I represent Plaintiff Appellant John O'Neal. A prosecutor's paramount objective is to seek justice. The prosecutor evaluates the evidence, decides whether to prosecute charges, dismiss charges, or plea bargain. A few weeks before the rape trial against Johnny O'Neal was set to begin, the prosecutor had concerns. The rape victim's identification of O'Neal was the prosecutor's main concern. Purportedly, the rape victim's identification began with two identifications from her tenth story window. The prosecutor then requested that the arresting officer, Defendant Apelli Morales, investigate that view from the tenth story . . . But doesn't all this make that witness preparation and the testimony part of trial preparation by the DA? The DA had a hole in the case that needed to be filled. Is this witness going to be reliable? Is this witness going to be believable about a tenth floor testimony? So he told the officer to go out and check that. Why is that not part of trial preparation? It is, Judge. It is part of trial preparation for the prosecutor. So why doesn't the immunity in those circumstances attach to the prosecutor's investigator? Because it is a completely separate function. The supreme . . . And only for trial. It would be different if the agent or the officer had gone out and then come and sui sponte, told the prosecutor this. But he is acting as the agent of the prosecutor in this task. Am I missing something? Yes, Judge. I believe that the Supreme Court has made clear that the person who is performing the function, whether it be the prosecutor, the agent of the prosecutor, a police officer, a DA's investigator, is not what's important. It's the function being performed. So when the prosecutor is performing her function of trial preparation, sitting in a room, discussing trial preparation, going over evidence, certainly if a DA investigator is performing that specific function of trial preparation with the prosecutor, that investigator is going to get absolute immunity, absolute judicial prosecutorial immunity. But once the investigator leaves the conference room, the prospect of immunity disappears? Is that your argument? Yes, Judge. Once the investigator performs a different function. So the function of the prosecutor in determining, yes, we do need to further investigate this 10-story window, or no, we do not need to further investigate this identification from the 10-story window, or whatever the prosecutor's decision... What's the purpose of the investigation, though? If the purpose of the investigation is not to file additional charges, right? He's going to testify at trial himself, and he did testify, more or less, right? Well, no. The purpose of this investigation was to ascertain whether or not the victim's identification from that 10-story window was possible. And if the... may require the obtaining, reviewing, and evaluating of evidence. So it can include obtaining evidence, namely, corroborative evidence here for the ID witnesses. So that's the difficulty, I think, you have with the questions we're asking you. Well, yes, Judge. Clearly, a prosecutor... And I would point to this Court's decision in Geraldo, where this reasonable prosecutor would say, this is something that a prosecutor would do. And a reasonable prosecutor would say, interviewing a witness is something a prosecutor would do. And when you interview a witness, you're obtaining additional evidence from that witness. And when you're obtaining that evidence from that witness, the way you do it, how you do it, is all a discretionary prosecutorial function. Do you dispute that the officer went to this 10-story apartment at the request of the prosecutor? Our allegation, based on the facts as we know them today, without the benefit of discovery, is that it was done at the request of the prosecutor. Would it make any difference if Morales hadn't been involved in the original investigation? In other words, if it had been Detective Jones, who was just doing the trial with the prosecutor, he was helping her out, and just was kind of the person to sit there during the trial and bring the evidence, get the witnesses lined up. And she said, would you go out and make sure that this witness can see from the 10th story of her apartment building? Would it have been different? Because Morales did the original investigation here, and actually, I think, filed a criminal complaint some 10 or 11 months before. Does that make any difference? I don't think it does, Judge. I believe under the Supreme Court, in particular, the critical analysis is the function being performed, not who performs it. And in looking at Kalina in particular, the Supreme Court asked—I'm sorry, Judge. Specifically, Judge, is it a discretionary act? So absolute immunity will attach to a act that requires discretion. So when a prosecutor is interviewing a witness, that is a discretionary act that the prosecutor is performing, obtaining evidence. However, in this particular case, Morales is not performing any discretionary act. There is no discretionary act in a witness going to a scene and reporting back to a prosecutor what he can see at that scene. But it's a prosecutor who's exercising the discretion to check on this in order to do that. In warning of Monroe County, we said that investigative work may be entitled to immunity when it is integral to the overarching advocacy function. So this is the prosecutor wanting to be sure he can advocate for this conviction and who sends someone out to see what you can see from the window. I mean, we haven't limited it the way you're urging us to limit it to what the prosecutor does in his or her office. Well, no, Judge. And if the prosecutor had performed this act, as this Court stated in Geraldo, when the Court stated investigative acts reasonably related to decisions whether or not to begin or carry on a particular criminal prosecution or to defend a conviction are shielded by absolute immunity when done by prosecutors. So the key there— But in many cases that say or persons performing acts at the direction of the prosecutor. What was Morales doing if he wasn't helping the prosecutor get ready for trial? Well, he was clearly helping—the prosecutor was preparing for trial. Morales was performing an investigative act. He was relaying facts. She asked him to go, so he was going out there to help her. She asked him to go. He went out there to help her. But he was performing an act as a witness. It had no discretion. There was no—the key to the Supreme Court's holding is that it's a function intimately associated with the judicial process, a discretionary act, an advocatory act. Morales is not performing any of that. The prosecutor is certainly performing that. And she's asking a witness, go out and get me facts. And if he would have come back and told her the truth, we likely would not be here today. A prosecutor relies on police witnesses to convey truthful facts to them. And when a police witness lies to a prosecutor, a prosecutor cannot effectively seek justice. All right. I know you want to reserve some time, so let's hear from the government. Good morning. May it please the Court, Patrick Lawless for the defendant's appellees, Jose Morales and New York City Housing Authority. The district court correctly found that—dismissed the case for two bases. And the basis that we were discussing is prosecutorial immunity. It's clear, it can't be disputed, that the prosecutor at the time she asked Detective Morales to go to the apartment, look out the window, was acting in her advocacy function. And she's asking, directing someone while in that function to perform a task. So it's clearly, so Detective Morales is clearly entitled to that same prosecutorial immunity. I understood counsel's last argument. The task given was come back and tell me what you can see. In other words, tell me what you truthfully can see. And they're alleging that he came back and he lied. I know that you dispute that, but that's the allegation we have to accept at this point. So how does the immunity extend to carrying out a prosecutorial function, not as you're told to do it, but coming back with a falsehood? He would still be entitled to whatever immunity the prosecutor would be entitled to. So say if the prosecutor went and did that same function herself and falsely reported that she could see faces when she couldn't, she would still be entitled to that immunity. So would the person she would be directing to do that function. So anything that she would be entitled to, he would be entitled to as well. So the allegation that he was falsely reporting that he could look out the window, I think is irrelevant. The charge is not to come back and lie to me. That the falsehood somehow breaks the link between the two of them. Why don't you tell me why you don't think we should view it that way? Because then you're going to render the immunity, I think, useless because the immunity is there for a reason that you're acting at the direction of the prosecutor while in the advocacy function. So then you would open up prosecutors as well as people acting at their direction. I may not be making myself clear. You're not suggesting the prosecutor said come back and lie. No. Okay. So if the officer does not do what he's told, come back and report the truth, why does he get the benefit of prosecutorial immunity? Because I think he's still acting at the direction of the prosecutor while in the advocacy function, and that would cover all actions taken under that. Let me ask you a hypothetical. Suppose the prosecutor said, look, I just got a phone call yesterday that a guy named Jones, who lives in Canarsie, has confessed to the murder that we're prosecuting somebody else for in a trial that's about to start. You go out. You know this case, officer. You've been the case agent all along. You've investigated it for me. So you go out and interview this man to see what he has to say. The officer goes out, comes back. The officer goes out, talks to the man, and the man says, look, I did it. You got the wrong guy. The cop comes back and tells the prosecutor, I couldn't find the man. Is the police officer in that hypothetical entitled to immunity? I would say he would still be, yes, he would still be entitled to, because he's still acting at the direction of the prosecutor while that prosecutor's engaged in that advocacy function. And it's still, as this court just said, it's still acting at the discretion of the prosecutor, at their direction, because if... Do you really want to go that road? Do you really want to tell us that when a police officer does something as egregious as Judge Parker just hypothesized to you, that he can claim immunity because he went out at the direction of the prosecutor, but he comes back with a complete falsehood? Because then what you're doing is then you're, any allegation that the investigator reported falsely to the prosecutor then would just eviscerate the whole prosecutorial immunity that would attach when someone's acting at a prosecutor's discretion. It's not clear to me from the record, so maybe I should be, I should ask you this. I mean, we have a defendant who spent time in jail for a conviction that was ultimately vacated, right? Yes. And is it your position that the officer was telling the truth when he said he could see, he could identify people from the window? I mean, if this case were to proceed, would your position be the officer was telling the truth? Well, the position is, well, also there's, in the complaint, there's two different allegations. His actual testimony at trial was, he was asked, can you, could you see faces from the window? And he said, yes. Then there's an allegation trying to separate what he testified at trial from what he spoke to the, when he allegedly spoke to the prosecutor, that he could see facial features. Now, there's no basis for the heightened specificity that he allegedly, when he allegedly spoke to the prosecutor from his trial testimony. His trial testimony, you're saying that his testimony, that you could see faces from the window? What we're saying is it's just, it's just his own subjective observation from the 10th floor window. So. Do you stand by his credibility on that? You don't think the problem in this case is that the officer and the witnesses were all testifying falsely about the ability to make an ID from that window? We're not alleging that, I mean, we're not conceding that his testimony was false. That all he testified to was what he could see, his subjective observation that he could see faces from the 10th floor window on the street below. And there's no evidence that that was a fault. There's no indication. If you look at the district attorney's response in state court to the motion to vacate, there's nothing in there indicating or discussing Detective Morales' testimony or any statements by Detective Morales as part of their rationale for recommending that the conviction be vacated. I thought one of the basis of vacature was that the DA sent people up to the 10th floor and they couldn't see faces. And on that, that was one of the reasons that the conviction was vacated. Well, that's noted in a footnote that they sent an investigator. But what they said was, what the actual basis was that the complaining witness and her mother both recanted their testimony and then it came evidence about someone who actually matched the description of the plaintiff that could have been the assailant. That was the basis. What about the fact that you couldn't identify faces from the 10th floor? That was in the report. I'd just like briefly to also address... But the crux of this case is, as I understand the plaintiff's argument is, if the police officer had come back and told the prosecutor, gee, you really can't identify faces from that window, that might have made the prosecutor hesitate to pursue the case or at least do more investigative work or whatever or probe with the witnesses and his client might not have been convicted. So that's why this is considered significant. And you're saying it's entitled to prosecutorial immunity. And I'm asking you whether that applies if the officer is not coming back and doing what the prosecutor told him to do, which is tell me what you could really see. Well, I would also say the district court found two bases. He was entitled to absolute immunity based on his trial testimony. And that's not disputed, but that would also be in preparation for his trial testimony. Let me stop you before he gets to the stand. Let's put aside the fact that he gets on the stand. The question is whether he should have come back and told the prosecutor there's a problem seeing from that window. Well, I don't think, I mean, again, all he did was go to the window, testify as to his own subjective... State before the testimony, because that otherwise, you need that for the prosecutorial immunity that he comes back and he tells the prosecutor you can see from the window. Why he shouldn't be entitled to? Why is he entitled to immunity if that's false? He would still be entitled to immunity because it would still, because again, if he would be entitled to whatever the prosecutor would be entitled to. So if the prosecutor went to the apartment and not him, and then it falsely stated or falsely reported that you could see faces from the window, then so would he. So he would be entitled to anything that the prosecutor would be. So if the prosecutor had said, look, go to the 10th floor and check it and look out of the window and see whether you can discern faces from the window. And the officer went down the street and had a cup of coffee, didn't go near the 10th floor, came back, told the prosecutor, I could see the face as clear as day. Entitled to immunity? Well, that's not what's being alleged here, but he would still... This is a hypothetical. I understand. But I would argue that he would still be entitled to immunity because he's still acting at the direction and discretion of the prosecutor. But he's like a faithless agent, an agent who frolics, an agent who acts outside of the scope of his agency. So why is he still entitled to be considered an agent? I don't think the cases get into that, I think, because again, then you're entering into an area where you could easily circumvent prosecutorial immunity for prosecutors and their agents. It's the same as the absolute immunity that attaches to trial testimony, as the Supreme Court cautioned in Rayburg, that if you could attack the preparatory activity as well as the testimony, then you could just easily circumvent the immunity. The immunity is there for a reason. And if you can come up with all these different hypotheticals and scenarios, then the immunity really has no force. With the prosecutor exercising what we'll call the most traditional prosecutorial functions, no matter what the motive, you can accuse the prosecutor of doing it for all kinds of horrible reasons. You don't get to pursue a damageous action against him. But I think the question we've been probing you on is whether that link is violated when the agent does not act as a faithful agent. But okay, we have your answer. We'll hear from Mr. Leventhal again on rebuttal. Thank you. Judge, the extension of prosecutorial immunity to others is very rare. We haven't found many cases on the subject. This court analyzed it recently in the Hill case, stating that individual employees who assist such an official who act under that official's direction in performing functions closely tied to the judicial process . . . Just to follow up on Judge Radji and Judge Parker's questions, though, does it matter whether what comes back is truthful or not? If the function is within the immunity,  I don't think it matters. I think the key is the function. The Supreme Court says it's the function that we look at, and it's the function that Morales was performing that is key. Well, if it doesn't matter, then I'm not sure I still understand your case. It doesn't matter because the Supreme Court, Kalina as well as protects officials who lie, who do the most corruptible, horrible things. So what they do really doesn't matter. The key is the function. And when we look at the function being performed, is it intimately associated to the judicial process? And is it a discretionary function? Does it require a prosecutor to use his discretion in performing that function? This function that Morales performed had no discretion necessary. Why isn't putting on truthful witnesses an essential prosecutorial function? It is. It is a critical function. I just don't . . . under Imler and Kalina, I don't see how that is part of the equation. I think we just look at the function being performed. If the function being performed, so if the prosecutor was preparing for trial and says to Morales, you know what, this tenth floor identification smells. And Morales says, no, it doesn't. You know, it's fine. I think it's good. They're sitting down preparing for trial. And no matter who it is, the Supreme Court is clear, it doesn't have to be a prosecutor. It's the function that we look at. Is it a judicial function? They were sitting . . . In the scenario that you just rehearsed, he gets prosecuted. He gets immunity. He was . . . Your theory then is if she says go check, he loses it. He loses it because now he's no longer performing a discretionary function. He's merely a witness relating facts. Thank you, Judge. We have the arguments of both sides. Thank you, gentlemen. We'll take the case under advisement. Our last case is on submission.